**IN THE FEDERAL DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HEATHER L. SANFORD, | } | |
| Plaintiff, | } | Civil Action No. |
| | } | |
| vs. | } | 1:20-CV-00712-AT-LTW |
| | } | |
| RUBIN LUBLIN, LLC, | } | |
| Defendant, | } | JURY DEMAND |
| | } | |

## AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION BASED ON DISABILITY

COMES NOW HEATHER L. SANFORD, (hereafter "Plaintiff" or "Employee"), in the above-styled case, and files this Amended Complaint against RUBIN LUBLIN, LLC (hereafter "Rubin Lublin," "Defendant," or "Employer"), and shows this Honorable Court the following:

### Parties

1.

Plaintiff Sanford is a resident of Gwinnett County, Georgia.

2.

Employer, RUBIN LUBLIN, has presently and has at all relevant times herein had its principal office at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071 (Gwinnett County).

1

3.

Employer, RUBIN LUBLIN, is a law firm employing 101 to 200 people, and organized as a Georgia Limited Liability Company.

4.

Employer, RUBIN LUBLIN, may be served through its Registered Agent, Peter Lublin, 3145 Avalon Ridge Place, Peachtree Corners, GA, 30071 (Gwinnett County).

5.

Michael Barringer (hereafter "Barringer") and Jamin Vogel ("Vogel") (Collectively "Supervisors") worked as Plaintiff's supervisors at RUBIN LUBLIN.

6.

Debra Goodhines (hereafter "Goodhines") was Sanford's HR Manager.

**Jurisdiction**

7.

This court has jurisdiction under 28 U.S.C. § 1331 (federal question) and by 42 U. S. C. §2000e-5.

8.

Jurisdiction and venue are proper in this court.

## Facts

9.

Plaintiff HEATHER L. SANFORD, a female with a disability, thirty-eight (38) years-of-age as of her termination from employment, and a member of protected classes, was last employed as a Foreclosure Specialist for Employer before her termination.

10.

She was employed by Rubin Lublin for a total time-period of over eight (8) months (eight (8) months and sixteen (16) days).

### Conversation with Barringer

11.

On or about the third week of 2019, Sanford had a conversation with her supervising attorney Barringer.

12.

The reason for the conversation was that Sanford's fellow employee had recently been fired, and most of the employee's job duties were then allocated to Sanford.

13.

Sanford had questions regarding the increase of her workload and her compensation.

14.

Sanford began the conversation with Barringer by informing him that she struggled with mental illness.

15.

Sanford explained that her mental illness resulted in her having anxiety and that she was experiencing anxiety regarding the increased workload situation.

16.

Sanford was previously informed by the former HR Manager named Lena that prior to moving to the Foreclosure Department her salary would have to be decreased as the most senior foreclosure representative did not earn annual wages identical to Sanford's.

17.

It was further explained to Sanford that her new income would decrease from $45,000 to $36,000 per year.

18.

Sanford was uncertain if an increase of income to compensate for her new additional workload would be possible based on her knowledge of her annual wages and what other foreclosure representative earned.

19.

Barringer intently listened to Sanford's concerns, writing them all down, and informed her that he would address each one with the Foreclosure Partner, Victor Kang.

20.

A few days later, Sanford was informed that her additional duties were to be allocated to another co-worker.

**Conversation with Debra Goodhines**

21.

On or about January 29, 2019, Sanford had a conversation with her HR Manager Debra Goodhines.

22.

Sanford explained that she had a mental illness.

23.

In addition, Sanford shared a concern that she was also experiencing symptoms of premature menopause.

24.

Goodhines and Sanford had a conversation about emotions.

25.

Sanford looked therein to Goodhines for support and accommodation.

26.

Goodhines assured Sanford that everything was fine.

27.

Goodhines indicated that Sanford's performance was satisfactory.

28.

Goodhines also stated that Sanford's two supervisors, Vogel and
Barringer, were pleased with her work and had only reported excellent
reviews of her work.

**Meeting with Barringer and Goodhines**

29.

On or about February 20, 2019, Sanford was asked by Barringer to
join him in a meeting.

30.

Barringer and Sanford met in a conference room and were met by
Goodhines.

31.

Goodhines informed Sanford that she had violated the company's
Code of Conduct policy.

32.

Goodhines then proceeded to read a written statement reciting the policy and the company's expectations moving forward.

33.

When finished speaking, Goodhines asked Sanford if she had any questions.

34.

Sanford did have questions and asked if Goodhines could inform Sanford of her alleged infractions.

35.

Goodhines stated that the infractions began shortly after her hiring at which time Sanford was transferred from the REO Department to the Foreclosure Department.

36.

Barringer stated that the main issues had begun around October 2018 and continued to the date of the meeting.

37.

Sanford asked why, if these issues had arisen in October 2018, she was receiving feedback four (4) months later.

38.

Barringer stated that he felt it was an isolated incident.

39.

Goodhines proceeded to explain that Sanford was merely too emotional, and that this was the primary reason Sanford was being put on report.

40.

Sanford asked Goodhines to clarify what "too emotional" meant. (Here Sanford engages in protected communicative/protest activity.)

41.

Goodhines further explained that Sanford was disrespectful to her once during a conversation because Sanford looked down at her feet.  (This could have been accommodated).

42.

Sanford was taken aback, and asked Goodhines to confirm that she was serious about her statement that Sanford was disrespectful to her once during a conversation because Sanford looked down at her feet.

43.

Goodhines proceeded to tell Sanford that Sanford's being too emotional was inappropriate and impaired productivity.

44.

Sanford then asked Barringer to confirm that her productivity was an issue.

45.

Barringer shook his head to indicate no.

46.

Goodhines then interjected that Sanford's emotional state lowered others' morale and affected their productivity.  (If true, this could have been accommodated).

47.

As Sanford asked additional questions about the infractions she was claimed to have committed, Goodhines excused herself.

48.

Upon returning a moment later, Goodhines informed her that her termination was effective immediately and that Sanford would receive a neutral reference and one week of severance pay.  This was retaliatory for questioning Rubin Lublin discriminatory activity preceding the termination.

49.

Sanford was then promptly escorted to her desk to gather her belongings and then out of the building.

## TERMS AND ASSERTIONS

50.

Discriminatory treatment of Sanford by Lubin Lublin, its partners, managers, officers, agents, and employees was in the terms and conditions of employment.

51.

Discriminatory actions include but are not limited to hostile and discriminatory episodes and actions by management, adverse treatment, unequal treatment of Sanford throughout her employment (to all those not fired for expressing themselves), hostile work environment, and ultimately termination on February 20, 2019.

52.

Rubin Lublin's purported reason for separation was violation of Code of Conduct policy and being "too emotional."

53.

There was no legitimate non-discriminatory reason for the actions taken by Rubin Lublin in its termination of Sanford.

54.

Rubin Lublin's explanation is pre-textual.

55.

The conduct of Rubin Lublin and its partners, officers, managers, agents, and employees amounted to discrimination in the terms, conditions, and privileges of Plaintiff HEATHER L. SANFORD's employment, because she was regarded as having a disability, because of her disability, because of her record of having a disability, because she was not reasonably accommodated, and because she made protected statements or actions regarding discrimination against her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended ("ADAAA") as described herein.

56.

At all relevant times, Sanford was and is a "qualified individual" as defined by 42 U.S.C. § 12111(8) of the ADAAA because she was able to perform the essential functions of her position as a Foreclosure Specialist at RUBIN LUBLIN, with or without reasonable accommodation.

57.

Plaintiff is substantially limited in one or more major life activities

58.

Plaintiff has a mental or psychological impairment under 29 C.F.R. Sec. 1630.2(h)(2).

59.

Rubin Lubin was well aware of Sanford's disability because it was disclosed to Barringer and Goodhines, on or about January 29, 2019.

60.

Sanford has been and remained at all times of her employment with Employer substantially limited in her major life activities as described herein. See 42 U.S.C. Sec. 12102(2), where concentrating, thinking, communicating, and working are included in major life activities. These apply to Sanford, as do major bodily functions neurological and brain functions.

61.

Rubin Lublin could have accommodated Sanford rather than terminating her.

62.

Sanford's positions consisted of paralegal tasks for which Sanford was qualified as a Certified Paralegal.

63.

Because of Rubin Lublin's purposeful indifference to Sanford's disability, she suffered unnecessarily.

64.

Accommodations, as needed, were feasible.

65.

Rubin Lublin never took the idea of accommodating Sanford seriously.

66.

At a minimum, Sanford was able to perform her job duties with reasonable accommodation.

67.

Rubin Lublin is not such a small company without any resources that could be used to make equipment or personnel accommodations for Sanford.

68.

Sanford has a record of a substantially limiting impairment.

69.

Sanford is and at all relevant times was regarded by Rubin Lublin as having a disability.

70.

During Sanford's employment with Rubin Lublin, she encountered discriminatory treatment vis-à-vis similarly situated employees who were not disabled.  On information and belief, no one else without a disability encountered the same treatment received by Sanford and described in this complaint.

71.

Sanford's claim lies in each of the following formulations of claim available under the ADAAA.

### _DISABILITY DISCRIMINATION UNDER THE ADA_

### COUNT I

### "REGARDED AS" DISCRIMINATION

72.

Rubin Lublin's discharge of Sanford violated the ADAAA, which prohibits discrimination against qualified individuals because of an actual or perceived physical or mental impairment.

73.

Rubin Lublin intentionally, and with reckless indifference to Sanford's rights, violated the ADAAA (42 U.S.C. § 12112) by terminating her

employment based on a perceived or actual physical or mental impairment, despite the clear prohibition of taking adverse action against otherwise qualified individuals on that basis, as set forth in the ADAAA.

74.

As a direct and proximate result of Rubin Lublin's intentional discrimination, Sanford has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, all in an amount to be established at trial.

75.

In addition, Rubin Lublin's actions have caused, continue to cause, and will cause Sanford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

76.

Moreover, Sanford is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT II

## DISABILITY DISCRIMINATION

77.

Sanford's allegations of causation and damages referenced in Court II

are the same as in Count I, above.

78.

At all times relevant to this Complaint, Sanford had a disability or was regarded as having a disability within the meaning of the ADAAA.

79.

At all times relevant to this Complaint, Sanford had a condition that substantially limits one or more major life activities, including but not limited to limitations to concentrating, thinking, communicating, and working pursuant to 42 U.S.C. § 12102(2)(A).

80.

Sanford was able to perform all of the essential functions of her position with reasonable accommodation.

81.

Rubin Lublin discriminated against Sanford in violation of the ADAAA on the basis of her disability when it denied her requested accommodations of having Rubin Lublin be understanding of her disability.  This accommodation would have allowed her to continue working at Rubin Lublin while fulfilling the essential functions of her position.

82.

Rubin Lublin further violated the ADAAA when they refused to enter into the required interactive process to determine whether the accommodation Sanford requested would be reasonable.

83.

Rubin Lublin would not have had any significant difficulty or expense in providing Sanford the accommodation of being understanding of her disability.  It would have required virtually nothing except for Rubin Lublin not to hold Sanford's disability against her.

84.

Rubin Lublin terminated Sanford supposedly for being too emotional. Sanford was performing her role at a superior level during her employment. The real reason Rubin Lublin terminated Sanford's employment is because she had a disability.

85.

Sanford has suffered and continues to suffer damages as a result of Rubin Lublin's unlawful actions.

86.

Rubin Lublin intentionally violated the ADAAA and acted with malice or reckless indifference to Sanford's federally protected rights.

87.

Rubin Lublin's discharge of Sanford violated the ADAAA which prohibits discrimination against qualified individuals because of an actual or perceived physical or mental impairment.

88.

Rubin Lublin intentionally, with reckless indifference to Sanford's rights, violated the ADAAA by terminating her employment based on a perceived or actual physical or mental impairment, despite the clear prohibition of taking adverse action against otherwise qualified individuals on that basis as set forth in the ADAAA.

## COUNT III

## RECORD OF DISABILITY DISCRIMINATION

89.

Sanford's allegations of causation and damages referenced in Court III are the same as in Count I, above.

90.

At the time her employment was terminated, Sanford had a record of disability as defined the ADAAA in that she had a history of substantially limiting physical or mental impairments.

91.

Rubin Lublin's discharge of Sanford violated the ADAAA which prohibits discrimination against qualified individuals because of disability, including a record of disability.

92.

Rubin Lublin intentionally, with reckless indifference to Sanford's rights, violated the ADAAA by terminating Sanford's employment, despite the ADAAA's clear prohibition of taking adverse action against otherwise qualified individuals based on a record of disability.

## COUNT IV

### DISCRIMINATION BASED ON THE FAILURE TO REASONABLY ACCOMMODATE

93.

Sanford's allegations of causation and damages referenced in Count IV are the same as in Count I, above.

94.

At all times relevant to this Complaint, Sanford had a disability or was regarded as having a disability within the meaning of the ADAAA.

19

95.

At all times relevant to this Complaint, Sanford had a condition that substantially limits one or more major life activities, including but not limited to limitations to concentrating, thinking, communicating, and working pursuant to 42 U.S.C. § 12102(2)(A).

96.

Sanford was able to perform all of the essential functions of her position with reasonable accommodation.

97.

Rubin Lublin discriminated against Sanford in violation of the ADAAA on the basis of her disability when it denied her requested accommodations of being understanding of her disability.   This accommodation would have allowed her to continue working at Rubin Lublin while fulfilling the essential functions of her position.

98.

Rubin Lublin further violated the ADAAA when they refused to enter into the required interactive process to determine whether the accommodations Sanford requested would be reasonable.

99.

Rubin Lublin would not have had significant difficulty or expense in providing Sanford the accommodation of being understanding of her disability.

100.

If Rubin Lublin would have engaged Sanford in the interactive process required by the ADAAA, her disability could have been reasonably accommodated and she would have been able to perform all the essential functions of her job.

101.

Rubin Lublin terminated Sanford supposedly for being too emotional. Sanford was performing her role at a superior level during her employment. The real reason Rubin Lublin fired Sanford is because she had a disability.

102.

Sanford has suffered and continues to suffer damages as a result of Rubin Lublin's unlawful actions.

103.

Rubin Lublin intentionally violated the ADAAA and acted with malice or reckless indifference to Sanford's federally protected rights.

## COUNT V

## RETALIATION BECAUSE OF
## PROTECTED ACTIVITY

### 104.

Sanford's allegations of causation and damages referenced in Court V are the same as in Count I, above.

### 105.

Sanford made requests for a reasonable accommodation of her disability, and the accommodations she requested would not have imposed significant hardship on Rubin Lublin.  Rubin Lublin failed and refused to provide the requested accommodations and refused to engage in the interactive process to determine the reasonableness of an accommodation.

### 106.

Sanford's requests for accommodation allowing her to have Rubin Lublin be understanding of her disability constituted her engagement in protected activity.  42 U.S.C. § 12203(a).  This protected activity was a determinative and motivating factor in Rubin Lublin's decision to force Sanford to resign.

### 107.

By its actions set forth above, Rubin Lublin intentionally retaliated against Sanford, who had requested a reasonable accommodation.  As a direct

result of Sanford's request, Rubin Lublin forced Sanford to resign.  Sanford has suffered and continues to suffer damages from that termination.  42 U.S.C. § 12203(a).

108.

Rubin Lublin coerced, intimidated, threatened and interfered with Sanford in the exercise or enjoyment of these rights and on account of her having exercised or enjoyed these rights under the ADAAA.  42 U.S.C. § 12203(b).

109.

Rubin Lublin's actions violated the provisions of the ADAAA, by interfering with Sanford for exercising her rights and/or by retaliating against Sanford because she opposed Rubin Lublin's discrimination on the basis of disability.

110.

Rubin Lublin intentionally, with reckless indifference to Sanford's rights, violated the ADAAA by terminating Sanford's employment, despite the ADAAA's clear prohibition of retaliating against employees for exercising their right to reasonable accommodation or for opposing discrimination on the basis of disability.

## COUNT VI

## DECLARATORY JUDGMENT

### 111.

This action is also brought for declaratory relief under 28 U.S.C. § 2201.  The discrimination in the above counts should be declared to have occurred.

## ELABORATION OF DAMAGES

### 112.

Sanford has incurred loss of income because of Rubin Lublin's actions and inactions, and she has suffered frustration and emotional distress because of the actions and inactions described herein.

### 113.

Because Rubin Lublin's alleged reason for its treatment of Sanford is pre-textual, the inference of malicious and improper disability discrimination is fair and reasonable.

### 114.

Sanford's alleged motivations of Rubin Lublin are plausible and unfortunately commonly seen motivations based on the facts at work.  Many people do not want to deal with people with disabilities, which is what gave rise to the ADA and ADAAA.

115.

Sanford has filed a charge with the Equal Employment Opportunity Commission regarding Rubin Lublin, and it is attached to her original complaint as Exhibit A and fully incorporated herein by reference.

116.

Sanford received a Notice of Right-to-Sue letter from the Equal Employment Opportunity Commission mailed November 18, 2019, which is attached to her original complaint as Exhibit B and fully incorporated herein by reference.

117.

Sanford seeks damages for lost income and lost benefits ("back pay"), in an amount to be proven at trial and damages for emotional pain, suffering, mental anguish, and inconvenience, also in an amount to be proven at trial.

118.

Sanford also seeks compensation for her costs, expenses, and attorney's fees, and punitive damages.

119.

Sanford also seeks a declaratory judgment that Rubin Lublin and its partners, officers, managers, agents, and employees treated Sanford

discriminatorily and took adverse actions against Sanford in a discriminatory manner, as set out in detail herein.

120.

Finally, Sanford seeks an injunction ordering Rubin Lublin and its officers, managers, agents, and employees to stop treating employees discriminatorily and taking adverse actions against employees in a discriminatory manner such as complained of by Sanford.  Rubin Lublin's employees deserve to the enjoy the protections of the ADAAA, which were not provided to Sanford during her employ.

WHEREFORE, Plaintiff HEATHER L. SANFORD demands judgment against Rubin Lublin for appropriate damages, costs, and attorney's fees, through a trial before a jury, and also seeks declaratory and injunctive relief, all as follows.  She prays that the Court:

A) Enter a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the ADA;

B) Permanently enjoin Defendant and its officers, managers, agents, and employees from engaging in the above described conduct;

C) Award Plaintiff damages for lost income, including lost wages and the value of all employment benefits Plaintiff would have received but

for acts and practices of Defendant, in an amount to be proven at trial,

special damages, pre-judgment interest, and damages for emotional

pain, suffering, mental anguish, and inconvenience;

D) Award Plaintiff reasonable attorney's fees, expenses, and costs

incurred in this action;

E) Award Plaintiff punitive damages; and

F) Order any other relief the Court deems to be equitable, just, or

appropriate.

This 1st day of June, 2020.


/s/ Drew Mosley
Drew Mosley
Ga. Bar No. 526406
Attorney for Plaintiff
Heather L. Sanford

Drew Mosley LLC
279 W. Crogan St.
Lawrenceville, GA 30046
Telephone (678) 225-0098
Fax (678) 221-0230
drew@mlawmail.com

## **LOCAL RULE CERTIFICATION**

Undersigned counsel attests that this document was prepared in Times New Roman, 14-point font that complies with this Court's Rules.

Respectfully submitted this 1st day of June, 2020.

Counsel for Plaintiff

*/S/ Drew Mosley*
Drew Mosley, Esq.
GA Bar No. 526406
Drew Mosley, LLC
279 W. Crogan St.
Lawrenceville, Georgia
30046
678-225-0098
678-221-0230 fax
drew@mlawmail.com

## <u>CERIFICATE OF SERVICE</u>

I certify that I have this day served the foregoing pleading to the

below via the Court's CMECF system.

> Sean Keenan
> Sunshine R. Nasworthy
> Cruser, Mitchell, Novitz,
> Sanchez, Gaston & Zimet, LLP
> Meridian II, Suite 2000
> Norcross, GA 30092
> skeenan@cmlawfirm.com
> snasworthy@cmlawfirm.com

Respectfully submitted this 1st day of June, 2020.

> Counsel for Plaintiff
>
> */S/ Drew Mosley*
> Drew Mosley, Esq.
> GA Bar No. 526406
> Drew Mosley, LLC
> 279 W. Crogan St.
> Lawrenceville, Georgia 30046
> 678-225-0098
> 678-221-0230 fax
> drew@mlawmail.com