IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HEATHER L. SANFORD,

     Plaintiff,

v.

RUBIN LUBLIN, LLC,

     Defendant.

CIVIL ACTION FILE NO.
1:20-cv-00712-AT-LTW

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Rubin Lublin, LLC. [Doc. 29]. Plaintiff Heather L. Sanford filed the present action on February 16, 2020. [Doc. 1]. Plaintiff filed her Second Amended Complaint [Doc. 27], which is the operative pleading in this case, on January 19, 2021. Defendant Rubin Lublin moves to dismiss Plaintiff Sanford's Complaint for failure to state a claim upon which relief can be granted. [Doc. 29]. For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion [Doc. 29] be **GRANTED in part and DENIED in part**.

## I.   **BACKGROUND**

In Plaintiff Sanford's Second Amended Complaint, she alleges that she was employed by Defendant Rubin Lublin for eight months and sixteen days.  [Doc. 27 ¶ 18].  Plaintiff asserts that her employment with Defendant ended on February 20, 2019, when she was terminated.  [Id. ¶ 62].[1]  Plaintiff was employed as a Foreclosure Specialist at the time of her termination.  [Id. ¶ 9].

Plaintiff has been diagnosed with Post Traumatic Stress Disorder and Borderline Personality Disorder.  [Doc. 27 ¶¶ 10, 14-17].  Plaintiff alleges in the Complaint that around the third week of January 2019, she had a conversation with Michael Barringer, her supervising attorney, wherein she informed Barringer that she struggled with mental illness.  [Id. ¶¶ 5, 19-23].  Plaintiff also allegedly told Barringer that her mental illness resulted in her having anxiety and that she was currently experiencing anxiety due to an increased workload.  [Id.].  A few days later, Plaintiff was informed that her additional job duties were to be allocated to a co-worker.  [Id. ¶¶ 27, 28].  The Complaint alleges that a short time later, on or about January 29, 2019, Plaintiff had a conversation with Human Resources ("HR") Manager Debra Goodhines wherein Plaintiff explained that she had a mental illness and shared a concern about

---

[1] Plaintiff apparently began her employment with Defendant around the beginning of June 2018.

experiencing symptoms of premature menopause.  [Id. ¶¶ 29-31].  Goodhines and Plaintiff talked about emotions, and Goodhines assured Plaintiff that "everything was fine." [Id. ¶¶ 32-36].  Goodhines also stated that Plaintiff's two supervisors, Barringer and Jamin Vogel, were pleased with her work and had only reported excellent reviews of her work.  [Id.].

Approximately three weeks later, on or about February 20, 2019, Barringer held a meeting with Plaintiff and Goodhines.  [Doc. 27 ¶¶ 37, 38].  During the meeting, Goodhines informed Plaintiff that she had violated Defendant's Code of Conduct policy.  [Id. ¶¶ 39, 40].  Goodhines and Barringer explained to Plaintiff that her infractions began around October 2018 and continued to the date of the meeting.  [Id. ¶¶ 41-44].  Plaintiff asked why she was receiving feedback four months later, and Goodhines stated that Plaintiff "was merely too emotional, and that this was the primary reason [Plaintiff] was being put on report." [Id. ¶¶ 45-47].  Plaintiff asked Goodhines to clarify what "too emotional" meant.  [Id. ¶ 48].

During the meeting, Goodhines also informed Plaintiff that she had been disrespectful to Goodhines once during a conversation when Plaintiff looked down at her feet.  [Doc. 27 ¶¶ 49, 50].  Goodhines told Plaintiff that her being too emotional was inappropriate, impaired her productivity, lowered others' morale, and affected their productivity.  [Id. ¶¶ 51, 54].  While Plaintiff asked additional questions,

Goodhines excused herself from the meeting but returned a moment later and informed Plaintiff that her termination was effective immediately. [Id. ¶¶ 57, 58]. Goodhines also told Plaintiff that she would receive a neutral reference and one week of severance pay. [Id. ¶ 58]. Plaintiff was then escorted to her desk to gather her belongings and then out of the building. [Id. ¶ 60].

Plaintiff Sanford asserts that Defendant Rubin Lublin subjected her to discrimination based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [Doc. 27 ¶ 66, Count I]. Plaintiff alleges in Count I that Defendant terminated her employment on the basis of her disability. [Id. ¶¶ 85, 86, 89]. Plaintiff alleges in Counts II and III that she was subjected to discrimination because Defendant regarded her as disabled and had a record of her disability. [Id., Counts II, III]. In Count IV, Plaintiff asserts that Defendant failed to provide her with a reasonable accommodation and refused to enter into the interactive process as required by the ADA. [Id., Count IV]. Plaintiff alleges in Count V that Defendant subjected her to retaliation in violation of the ADA after she requested a reasonable accommodation. [Id., Count V]. Defendant Rubin Lublin has moved to dismiss all of Plaintiff Sanford's claims based on Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 29].

II.   **LEGAL STANDARD**

When a motion to dismiss is brought pursuant to Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  See Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).  The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rather, for a complaint to properly state a claim, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a

claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted) (emphasis omitted).

A plaintiff's complaint is required to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  In addition, the allegations supporting a claim are to be made in separate paragraphs "each limited as far as practicable to a single set of circumstance." Fed. R. Civ. P. 10(b).  The court's focus is whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted); accord T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) ("The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is

claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .") (Tjoflat, J., dissenting).

## III.   **DISCUSSION**

### A.   **Plaintiff's EEOC Charge**

Defendant first contends that some of Plaintiff's claims are barred based on the scope of her charge with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 29-1 at 10]. Defendant asserts in a brief argument that Plaintiff's claims based on failure to accommodate, hostile work environment, disparate treatment, and retaliation should be dismissed because Plaintiff did not assert these claims in her EEOC charge. [Id.]. The undersigned disagrees.

"Prior to filing an action in federal court for discrimination or retaliation, a plaintiff must file an administrative charge with the EEOC." Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 892 (11th Cir. 2014) (citing Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004)). "The purpose of the exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged practices and to perform its role 'in obtaining voluntary compliance and promoting conciliation efforts.'" Id. (quoting Gregory, 355 F.3d at 1279). It is well established that a "plaintiff's judicial complaint is limited by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280 (citation and internal quotation marks omitted). Courts are "extremely reluctant to allow procedural technicalities to bar" employment discrimination claims. Id. (citation and internal quotation marks omitted). Moreover, the Eleventh Circuit has explained that "the scope of an EEOC complaint should not be strictly interpreted." Id. (citation and internal quotation marks omitted).

In the present case, the Court finds that Plaintiff has plausibly asserted that the scope of the EEOC investigation which could reasonably be expected to grow out of her charge would include Plaintiff's ADA claims asserted in her Complaint. As previously noted, Plaintiff's Complaint alleges that Defendant terminated her employment on the basis of her disability, regarded her as disabled and had a record of her disability, failed to provide her with a reasonable accommodation, and subjected her to retaliation after she requested a reasonable accommodation. [Doc. 27]. Plaintiff Sanford filed an EEOC charge against Defendant Rubin Lublin on February 25, 2019. [Doc. 1-1]. Plaintiff alleged in the charge that on January 29, 2019, she informed her supervisor, Michael Barringer, and HR Manager Debra Goodhines about her disabilities. [Id.]. Plaintiff also alleged in the charge that she was terminated on February 20, 2019, when she received a disciplinary report. [Id.]. In addition, Plaintiff

alleged in the EEOC charge that the reason given for her discharge was that she was "too emotional."  [Id.].

An EEOC investigation into these allegations would reasonably be expected to examine the issues raised by Plaintiff in her Complaint, including her claims for failure to accommodate and retaliation.  Plaintiff is not bringing any claims of discrimination based on race or sex or any other protected characteristic.  Instead, Plaintiff is only asserting disability discrimination and retaliation claims pursuant to the ADA, and the allegations in her Complaint are consistent with those in her EEOC charge.  In light of these facts, and because the scope of an EEOC charge "should not be strictly interpreted," the undersigned concludes that Plaintiff's Complaint should not be dismissed based on the scope of her EEOC charge.  Gregory, 355 F.3d at 1280 (citation and internal quotation marks omitted).

### B.   Plaintiff's Alleged Misconduct

Defendant argues Plaintiff's Complaint should be dismissed because she was terminated after she violated Rubin Lublin's Code of Conduct.  [Doc. 29-1 at 11-12]. Defendant contends that it was not required to give Plaintiff a pass and excuse her misconduct.  [Id.].  The Court need not spend much time on this argument.  Whether Defendant made the decision to fire Plaintiff on the basis of her misconduct or whether this assertion is a pretext for disability discrimination is not an issue to be addressed by

the Court when evaluating a motion to dismiss. Plaintiff's Complaint alleges that a few weeks after she informed HR Manager Debra Goodhines of her mental illness, Goodhines terminated Plaintiff's employment and told her that she was too emotional. [Doc. 27 ¶¶ 29-31, 37-40, 45-47, 57, 58]. As discussed *supra*, to survive a Rule 12(b)(6) motion, Plaintiff's Complaint merely has to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Plaintiff's Complaint satisfies this standard. Dismissal is not warranted simply because Defendant alleges that Plaintiff was justly terminated based on her misconduct.

### C.   Qualified Individual with a Disability

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). "To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest (1) that [she] suffers from a disability, (2) that [she] is a qualified individual, and (3) that a covered entity discriminated against [her] on account of [her] disability." Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1245-46 (11th Cir. 2015) (citation and internal quotation marks omitted) (clarifying that the Iqbal-Twombly pleading standard governs the motion to dismiss analysis). Defendant contends that Plaintiff Sanford has not

sufficiently alleged that she suffers from a disability.   [Doc. 29-1 at 12-15, 20].

Defendant argues that Plaintiff's Complaint does not set forth allegations showing:

what impact her Post Traumatic Stress Disorder and Borderline Personality Disorder

had on her ability to perform a wide range of jobs; that Defendant should have been on

notice that Plaintiff's mental illness caused performance issues; that Defendant

regarded Plaintiff as disabled; or that there was a "record of" her disability.[2]  [Id.].  The

undersigned finds Defendant's arguments unpersuasive.

The ADA defines the term "disability" as "(A) a physical or mental impairment

that substantially limits one or more major life activities of such individual; (B) a record

of such an impairment; or (C) being regarded as having such an impairment . . . ."  42

U.S.C. § 12102(1)(A)–(C).  Under the ADA, "major life activities include, but are not

limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  In

addition, the ADA Amendments Act of 2008 ("ADAAA") amended the ADA to further

provide that, for the purpose of establishing the existence of a "disability," major life

---

[2] Defendant also repeats its argument, which the Court addressed *supra*, that Plaintiff was terminated because she violated Rubin Lublin's Code of Conduct.  [Doc. 29-1 at 14-15].

activities include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). The ADAAA states that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102(4)(A).

"An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An individual, however, will not be able to meet the requirement of being "regarded as" disabled if her impairment is "transitory and minor," that is, "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Thus, a plaintiff may establish that she is disabled simply by showing that defendant "perceived [her] to have a physical or mental impairment, 'whether or not the impairment . . . is perceived to limit a major life activity.'" Adkison v. Willis, 214 F. Supp. 3d 1190, 1196–97 (N.D. Ala. 2016) (quoting 42 U.S.C. § 12102(3)(A)); and see Dulaney v. Miami-Dade Cty., 481 F. App'x 486, 489 n.3 (11th Cir. 2012) ("In 2008, . . . Congress changed the definition of

'disability' such that being 'regarded as' having a disability no longer requires a showing that the employer perceived the individual to be substantially limited in a major life activity.").

An individual will also be found disabled if there is a "record of" a physical or mental impairment that substantially limits one or more major life activities.  See 42 U.S.C. § 12102(1)(B).  "The relevant regulation defines 'record of' . . . as meaning that a person 'has a history of, or has been misclassified as having,'" such an impairment. Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1228-29 (11th Cir. 1999) (quoting 29 C.F.R. § 1630.2(k)).  "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. . . . This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment."  Id. (quoting 29 C.F.R. § 1630.2(k)) (internal quotation marks omitted).

Plaintiff's Complaint asserts that she has been diagnosed with Post Traumatic Stress Disorder and Borderline Personality Disorder.  [Doc. 27 ¶¶ 10, 14-17].  Around the third week of January 2019, Plaintiff informed Michael Barringer, her supervising attorney, that she struggled with mental illness.  [Id. ¶¶ 5, 19-23].  Plaintiff also informed Barringer that her mental illness resulted in her having anxiety and that she was currently experiencing anxiety due to an increased workload.  [Id.].  A short time

later, on or about January 29, 2019, Plaintiff explained to HR Manager Debra Goodhines that she had a mental illness and shared a concern about experiencing symptoms of premature menopause. [Id. ¶¶ 29-31]. Around this same time, Defendant informed Plaintiff that her additional duties were being allocated to a co-worker. [Id. ¶¶ 27, 28]. Approximately three weeks later, on or about February 20, 2019, in a meeting attended by Goodhines, Barringer, and Plaintiff, Goodhines allegedly stated that Plaintiff "was merely too emotional, and that this was the primary reason [Plaintiff] was being put on report." [Id. ¶¶ 45-47]. During the meeting, Goodhines also informed Plaintiff that she had been disrespectful to Goodhines once during a conversation when Plaintiff looked down at her feet and that Plaintiff's actions in being too emotional was inappropriate, impaired her productivity, lowered others' morale, and affected their productivity. [Id. ¶¶ 49-51, 54]. According to the Complaint, Plaintiff was then informed by Goodhines that she was terminated effective immediately. [Id. ¶¶ 57, 58].

Given these statements, the Court finds that Plaintiff has plausibly asserted that she has a mental impairment that substantially limits one or more major life activities, including work. According to the Complaint, Defendant was aware of Plaintiff's mental illness and anxiety caused by an increased workload, and Defendant provided Plaintiff with an accommodation on one occasion when it allocated her job duties to another employee after being informed of Plaintiff's mental impairment. In light of

these facts, the undersigned concludes that Plaintiff has plausibly alleged that she is an individual with a disability under the ADA, that she was "regarded as" disabled by Defendant, and that there was a "record of" her disability.

Defendant Rubin Lublin next argues that Plaintiff Sanford is not a "qualified individual" under the ADA.  [Doc. 29-1 at 15-16].  The ADA defines the term "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires[.]"  42 U.S.C. § 12111(8).  "Accordingly, an ADA plaintiff must show either that [she] can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation."  D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1229 (11th Cir. 2005) (citation and internal quotation marks omitted).  If a plaintiff cannot perform an essential function of her job, even with a reasonable accommodation, then she is not a "qualified individual."  See Davis v. Florida Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000).

Defendant makes a brief argument that Plaintiff is not a qualified individual because she "could not perform an essential function of her position—peaceful interaction with others."  [Doc. 29-1 at 15-16].  Defendant's argument is lacking. Plaintiff's Complaint does not allege that she was unable to perform the functions of

her job such as interacting with others.   Instead, Plaintiff plausibly alleges in the Complaint that she is a qualified individual because her positions with Rubin Lublin "consisted of paralegal tasks for which [Plaintiff] was qualified as a Certified Paralegal."  [Doc. 27 ¶ 73].   The Complaint also asserts that Plaintiff was able to perform the job duties of a Foreclosure Specialist for more than eight months until she was terminated.  [Id. ¶¶ 9, 18].  Plaintiff has sufficiently pleaded that she is a "qualified individual" under the ADA.  The Court finds that based on these facts, dismissal is not warranted on Plaintiff's disability discrimination claim [Doc. 27, Count I], her "regarded as" claim [Doc. 27, Count II], or her "record of" claim [Doc. 27, Count III].

### D.   Failure to Accommodate

Plaintiff asserts in Count IV of her Complaint that Defendant subjected her to disability discrimination by failing to provide her with a reasonable accommodation. [Doc. 27, Count IV].  The ADA's definition of "discriminate" includes a failure to make reasonable accommodations to the limitations of an individual with a disability. See 42 U.S.C. § 12112(b)(5)(A).   "Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show

undue hardship."[3]  Holly v. Clairson Industries, L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original).

Defendant contends that Plaintiff never requested an accommodation.  [Doc. 29-1 at 16-18].  Instead, according to Defendant, Plaintiff merely states in a conclusory manner that Defendant should have accommodated her.  [Id.].  "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable."  Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000).  Thus, "[t]he plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires."  Gilliard v. Georgia Dep't of Corrections, 500 F. App'x 860, 868 (11th Cir. 2012) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997)).

---

[3] The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), does not apply to reasonable accommodation claims.  See Nadler v. Harvey, No. 06-12692, 2007 WL 2404705, at *8 (11th Cir. Aug. 24, 2007) ("An employer *must* reasonably accommodate an otherwise qualified employee with a *known* disability unless the accommodation would impose an undue hardship in the operation of the business. . . . Thus, applying McDonnell Douglas to reasonable accommodation cases would be superfluous, since there is no need to prove discriminatory motivation.") (emphasis in original).

Plaintiff alleges in her Complaint that "Rubin Lublin discriminated against Sanford . . . when it denied her requested accommodation of being understanding of her disability." [Doc. 27 ¶ 111]. Plaintiff also asserts that Defendant should have been understanding of her Post Traumatic Stress Disorder and Borderline Personality Disorder by, "for example, not freaking out if she looked at the floor for composure or expressed emotions." [Id. ¶ 85]. In addition, Plaintiff claims that Defendant violated the ADA when the company "refused to enter into the required interactive process to determine whether the accommodation Sanford requested would be reasonable." [Id. ¶ 86].

Although the issue is a close one, the Court finds that at this early stage of litigation, Plaintiff has plausibly alleged a claim for ADA failure to accommodate. The relevant regulations provide that an employer may need "to initiate an informal, interactive process" with the employee to identify her limitations and possible accommodations. 29 C.F.R. § 1630.2(o)(3). As noted *supra*, Defendant contends that Plaintiff never requested an accommodation. [Doc. 29-1 at 16-18]. The Eleventh Circuit "has not 'determined precisely what form [a request for an accommodation] must take.'" Adigun v. Express Scripts, Inc., 742 F. App'x 474, 476 (11th Cir. 2018) (quoting Holly, 492 F.3d at 1261 n.14)). However, the Court in Adigun noted that the Tenth Circuit "has explained that a plaintiff 'need not use magic words,' but 'should

provide enough information about his or her limitations and desires [] to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company.'" <u>Id.</u>, 742 F. App'x at 476 (quoting <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1172 (10th Cir. 1999)).  The <u>Adigun</u> Court also pointed out that "the Third Circuit has held that a plaintiff making a failure to accommodate claim must have provided 'enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'" <u>Id.</u> (quoting <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 314 (3d Cir. 1999)).

In the present case, Plaintiff alleges that she informed her employer that she struggled with mental illness.  [Doc. 27 ¶¶ 5, 10, 14-23, 29-31].  Plaintiff also allegedly explained to Defendant in January 2019 that her mental illness resulted in her having anxiety and that she was currently experiencing anxiety due to an increased workload. [<u>Id.</u> ¶¶ 5, 19-23].  A short time later, Defendant informed Plaintiff that her additional duties were being allocated to a co-worker.  [<u>Id.</u> ¶¶ 27, 28].  A few weeks later, when Defendant terminated Plaintiff's employment, HR Manager Debra Goodhines allegedly stated that Plaintiff "was merely too emotional, and that this was the primary reason [Plaintiff] was being put on report."  [<u>Id.</u> ¶¶ 45-47].  Goodhines also informed Plaintiff that she had been disrespectful to Goodhines once during a conversation when Plaintiff looked down at her feet and that Plaintiff's actions in being too emotional was

inappropriate, impaired her productivity, lowered others' morale, and affected their productivity.  [Id. ¶¶ 49-51, 54].

The Court finds the Complaint sufficiently alleges that Plaintiff requested an accommodation because she "provided 'enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'"  Adigun, 742 F. App'x at 476 (quoting Taylor, 184 F.3d at 314).  Plaintiff has also plausibly alleged that Defendant should have "initiate[d] an informal, interactive process" with Plaintiff to identify her limitations and possible accommodations.  29 C.F.R. § 1630.2(o)(3).  For these reasons, the Court concludes that dismissal is not warranted on Plaintiff's ADA failure to accommodate claim.

### E.   ADA Harassment Claim

Defendant Rubin Lublin argues Plaintiff has failed to state a claim for disability harassment.  [Doc. 29-1 at 18-19].  It is not clear from Plaintiff's Complaint whether she is even asserting an ADA claim for harassment/hostile work environment.  Plaintiff uses the phrase "hostile work environment" in one paragraph of her Complaint, but she does not assert a separate claim for harassment/hostile work environment.  [Doc. 27 ¶ 62].  The Eleventh Circuit has not recognized a hostile work environment claim under the ADA.  See Menzie v. Ann Taylor Retail, Inc., 549 F. App'x 891, 896 n.9 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment

claim is available under the ADA. We do not decide that issue today because [plaintiff] never asserted such a claim.").  But even assuming that such a claim exists, and assuming that Plaintiff has attempted to assert such a claim, the Court finds that she has failed to state a plausible claim for relief.

To establish an ADA hostile work environment claim, a plaintiff must show that: (1) she belongs to a protected group, that is, she has a disability; (2) she has been subject to unwelcome harassment; (3) the harassment was based on plaintiff's disability; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  Plaintiff has offered no factual allegations in her Complaint showing that she was subjected to disability-based harassment which was sufficiently severe or pervasive to create an abusive work environment.  The extent of Plaintiff's allegations relevant to this claim are her assertion that unidentified "hostile and discriminatory episodes and actions [were taken] by management[.]"  [Doc. 27 ¶ 62].  This vague and conclusory assertion is insufficient.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In addition, Plaintiff's response to Defendant's argument regarding her ADA hostile work environment claim does not mention harassment, only Defendant's actions in terminating her employment. [Doc. 31 at 15]. Plaintiff merely writes, "There were numerous comparators who were presumably not terminated for their manner of interaction. It is difficult to prove a negative prior to discovery, but because even a convincing mosaic will suffice, Sanford's claims should not be dismissed at this stage." [Id.]. This is the entirety of Plaintiff's argument addressing her harassment claim, and it is clearly lacking. Because the Complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" but, instead, provides "mere conclusory statements," the Court **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 29] be **GRANTED** on Plaintiff's ADA hostile work environment claim [Doc. 27]. Iqbal, 556 U.S. at 678 (citation omitted).

### F.   ADA Retaliation Claim

Plaintiff Sanford alleges in Count V that Defendant Rubin Lublin subjected her to retaliation in violation of the ADA. [Doc. 27, Count V]. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation,

22

proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Section 12117 of the ADA, which speaks to remedies for violation of the ADA's anti-retaliation provision in the employment context, incorporates the remedies available under Title VII. See Albra v. Advan, Inc., 490 F.3d 826, 832 (11th Cir. 2007) (citing 42 U.S.C. § 12117(a)). Because these provisions create prohibitions on retaliation that are similar to those found in Title VII, courts evaluate ADA retaliation claims under the same framework used for Title VII retaliation claims. See Earl, 207 F.3d at 1367; Stewart, 117 F.3d at 1287.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show the same elements generally required for a claim of illegal retaliation under Title VII: (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the expression and the adverse employment action. See Stewart, 117 F.3d at 1287. Plaintiff suffered an adverse employment action when she was terminated. With regard to protected expression under the ADA, this element may be met by a request for a reasonable accommodation. See Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016) (first *prima facie* element of ADA retaliation claim that plaintiff engage in statutorily protected expression satisfied by request for accommodation). Defendant's only argument in support of its Motion to Dismiss Plaintiff's retaliation claim is that

Plaintiff did not engage in protected activity. [Doc. 29-1 at 19]. As discussed *supra*, the Court has found that the Complaint sufficiently alleges Plaintiff requested an accommodation because she "provided 'enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'" Adigun, 742 F. App'x at 476 (quoting Taylor, 184 F.3d at 314). Because Plaintiff has plausibly alleged that she requested an accommodation, she satisfies the protected activity element under the ADA. See Frazier-White, 818 F.3d at 1258.

The third and final element of a *prima facie* case of retaliation under the ADA requires Plaintiff to show that there is a causal connection between the protected expression and the adverse employment action. See Stewart, 117 F.3d at 1287. Under the ADA, the causal link element "requires a showing of but-for causation." Frazier-White, 818 F.3d at 1258 (citing Univ. of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 360-62 (2013)). If an employer takes an adverse employment action against an employee shortly after becoming aware of the employee's protected expression, then the close temporal proximity between the two events is sufficient to meet the "but-for" causation requirement. See Adams v. City of Montgomery, 569 F. App'x 769, 773 (11th Cir. 2014) (Title VII case). "But mere temporal proximity, without more, must be very close." Id. (citation and internal quotation marks omitted).

In the Eleventh Circuit, a "delay of four to nine months is too remote, as a matter of law, to show a causal connection." Cazeau v. Wells Fargo Bank, N.A., 614 F. App'x 972, 980 (11th Cir. 2015) (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007)).

Plaintiff's alleged request for accommodation occurred in late January 2019 when she informed Defendant of her mental illness and stated that she was experiencing anxiety due to an increased workload. [Doc. 27 ¶¶ 5, 19-23, 29-31]. Plaintiff was terminated on or about February 20, 2019. [Doc. 27 ¶¶ 37, 38, 57, 58]. Therefore, the temporal proximity between Plaintiff's alleged request for accommodation and her termination was less than a month. This period of time is sufficiently close to establish a causal link for purposes of a retaliation claim. See Adams, 569 F. App'x at 773. The Court finds that Plaintiff is able to establish the elements necessary for her retaliation claim to survive Rule 12(b)(6) scrutiny. Because Plaintiff's "allegations provide sufficient factual content to give the defendant[] notice and to state a plausible claim for relief under Twombly[,]" dismissal is not warranted on Plaintiff's ADA retaliation claim [Doc. 27, Count V]. Smith v. CH2M Hill, Inc., 521 F. App'x 773, 775 (11th Cir. 2013).

IV.   **CONCLUSION**

Based on the foregoing reasons and cited authority, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 29] be **GRANTED in part and DENIED in part**. Specifically, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 29] be **GRANTED** on Plaintiff's ADA hostile work environment claim [Doc. 27]. With regard to Plaintiff's remaining claims, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 29] be **DENIED**.

If the District Court allows any of Plaintiff's claims to go forward, then Defendant's answer to Plaintiff's Complaint will be due fourteen days from entry of the District Court's order on the Motion to Dismiss. See Fed. R. Civ. P. 12(a)(4)(A).

**SO REPORTED AND RECOMMENDED**, this __9__ day of June, 2021.


_LINDA T. WALKER_
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE